Ernest SZELENYI, et al.

v.

George MILLER.

Supreme Judicial Court of Maine.

Argued Sept. 6, 1989.

Decided Oct. 4, 1989.

Harrison L. Richardson and William K. McKinley (orally), Richardson & Troubh, Portland, for plaintiffs.

John F. Shepard, Jr. (orally), Shepard & Shepard, Freeport, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

McKUSICK, Chief Justice.

In 1988 we upheld a jury award of $260,-000 to George Miller in a medical malpractice action against Dr. Ernest Szelenyi. *See Miller v. Szelenyi*, 546 A.2d 1013 (Me. 1988). Dr. Szelenyi's insurer paid Miller $100,000, the limit of the doctor's malpractice coverage. Miller is attempting to collect the balance directly from Dr. Szelenyi. In response to those collection efforts, Dr. Szelenyi and his wife Ellen brought this declaratory judgment action to determine the extent to which real and personal property acquired by them during their marriage is available to satisfy the Miller judgment and execution. The Superior Court (Cumberland County, *Alexander, J.*) ruled that all of the Szelenyis' property, excluding property exempt under 14 M.R.S.A.

§ 4422 (Supp.1988), is subject to the execution held by Miller. On the Szelenyis' appeal, we affirm in part and vacate in part.

The Szelenyis were married in 1951 and moved to Maine in 1954. Since 1957 Dr. Szelenyi has been the family's sole wage earner. During the course of their marriage, the Szelenyis acquired a home in Yarmouth, a camp in Oakland, two joint bank accounts, two annuity contracts with the IDS Insurance Company, several life insurance policies, and numerous items of tangible personal property. The sole issue on appeal is the extent to which Mrs. Szelenyi has a separate property interest, if any, in the property acquired during the marriage. In our analysis of this issue, we divide the property into three categories.

### Jointly Owned Real Estate and Other Tangible Property

The Szelenyis hold their camp in Oakland and their home in Yarmouth in joint tenancy. Mrs. Szelenyi testified that all the other household items and tangible property are also held in joint tenancy.

■ The parties and the Superior Court have referred to the Szelenyis' "marital estate" to describe the property acquired during the course of the marriage. This phrase confuses rather than enlightens analysis of the legal issue involved in the case at bar. Although our divorce statute uses the similar term "marital property" in dividing property upon divorce, *see* 19 M.R.S.A. § 722–A (1981), neither term has any application to the present situation in which a divorce or legal separation is neither pending nor contemplated. *See Zillert v. Zillert*, 395 A.2d 1152, 1155 (Me. 1978). The term "marital property" is used in section 722–A "[f]or purposes of this section only." *Id.* § 722–A(2). The fact that the Szelenyis are married does not affect the nature of their respective interests in jointly owned property. *See Poulson v. Poulson*, 145 Me. 15, 18, 70 A.2d 868, 870 (1950). The nature of Mrs. Szelenyi's interest in the jointly held property, including the extent to which it is subject to execution to satisfy her husband's judgment debt, is determined by common law principles of joint tenancy.

■ As a general rule the entire interest in real property held by joint tenants cannot be used to satisfy the judgment creditor of one joint tenant. *See First Nat'l Bank v. Energy Fuels Corp.*, 200 Colo. 540, 618 P.2d 1115 (1980). *See also National Indus. v. Republic Nat'l Life Ins. Co.*, 677 F.2d 1258, 1269 (9th Cir.1982); *Nicks v. Nicks*, 80 Ill.App.3d 838, 36 Ill. Dec. 11, 12, 400 N.E.2d 431, 432 (1979). A lien created by a judgment "attaches only to the interest of the debtor joint tenant." *Irvin L. Young Found. v. Damrell*, 511 A.2d 1069, 1070 (Me.1986).

■ Accordingly, Mrs. Szelenyi's joint tenancy interest in the real and tangible personal property cannot be reached by the judgment creditor. Miller can execute only upon Dr. Szelenyi's undivided half interest in the property. The end result of Miller's execution on Dr. Szelenyi's half interest will be a severance of the joint tenancy. *See* 4A *Powell on Real Property* ¶ 618, at 51–15 (1989).

### Jointly Held Bank Accounts

At issue on appeal is the Szelenyis' respective interests in two jointly owned savings accounts at Peoples Heritage Bank. The principal account, with a balance of almost $105,000 in 1987, is and has been the Szelenyis' primary working account during their marriage.

■ Ownership of jointly held bank accounts is controlled by the Maine Probate Code.

A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contribution by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

18–A M.R.S.A. § 6–103(a) (1981). The "net contribution" of a party is defined as "the sum of all deposits ... less all withdrawals" made to the account by or for the party. *Id.* § 6–101(6).

■ Following the hearing the Superior Court emphasized that

there is no basis to separate out and reserve funds in the joint account to Mrs. Szelenyi. The evidence seems clear that at least since 1957 all of the funds in the accounts have been contributed, when we talk about contributing funds, by Dr. Szelenyi.... [T]he basic financial contributions to these accounts came from Dr. Szelenyi. It's his interest in them.

The Superior Court specifically found that "the Szelenyis intended to pool their assets, not to make gifts to one another when they made deposits into the joint bank accounts." We understand the court to mean that the Szelenyis intended to put their moneys into a single bank account "pool," but did not intend to change the beneficial ownership of those moneys. Under the Probate Code Mrs. Szelenyi had the burden of proving by "clear and convincing evidence" that Dr. Szelenyi intended to make a gift to her, or to change the beneficial ownership of his earnings when depositing them into their joint account.[1] *See Commissioner of Human Servs. v. Levesque*, 528 A.2d 456 (Me.1987); 18-A M.R.S.A. § 6–103 comment. *Cf. Brackett v. Larrivee*, 562 A.2d 138, 139 & n. 2 (Me.1989) (burden of proof on donee of intervivos gift). Mrs. Szelenyi failed to carry her burden, and the record does not at all compel a finding contrary to that of the Superior Court. *See LaDew v. Commissioner of Mental Health & Mental Retardation*, 532 A.2d 1051, 1054 (Me.1987) (proof required by clear and convincing evidence).

There is some evidence suggesting that Mrs. Szelenyi contributed $2,600 to the joint account in the early 1950s. She, however, has made no financial contribution in more than 30 years. It was not clearly erroneous for the Superior Court to infer that no part of Mrs. Szelenyi's contribution remains today in this large and active bank account.

### The IDS Annuity Contracts and Life Insurance Policies

Also at issue are two annuity contracts and several life insurance policies purchased during the course of the Szelenyis' marriage. At the hearing the Superior Court stated that these items, along with the residence and camp, "were essentially joint property, jointly held property in this matter." This finding is clearly erroneous as to the annuity contracts and the insurance policies. All of them, by contract with third parties, are solely owned by Dr. Szelenyi. The record clearly establishes that Mrs. Szelenyi's only interest in the contracts or the policies is as an annuitant or beneficiary; she has no ownership interest in them.

To the extent that any judgment creditor may execute upon annuity contracts and insurance policies, Miller may execute upon the contracts and policies here at issue. They are Dr. Szelenyi's sole property.

The entry is: Judgment as to the real estate and other tangible property is vacated; remanded to the Superior Court with instructions to declare that a one half undivided interest in that property is owned by Mrs. Szelenyi and is not subject to execution by defendant George Miller.

Judgment as to the joint bank accounts is affirmed.

Judgment as to the annuity contracts and insurance policies is vacated; remanded to the Superior Court with instructions to declare that the property is solely owned by Dr. Szelenyi and is not free from execution because of any interest therein owned by Mrs. Szelenyi.

All concurring.

---

1. This view is consistent with the view taken in other jurisdictions that have adopted section 6–103 of the Uniform Probate Code. *See e.g., Hefner v. Estate of Ingvoldson*, 346 N.W.2d 204, 206 (Minn.App.1984); *Erhardt v. Leonard*, 104 Idaho 197, 657 P.2d 494 (1983).