**MARYLAND CASUALTY COMPANY, Plaintiff,**

v.

**TRANSPORTATION UNDERWRITERS et al., Defendants.**

**No. C 63-380.**

United States District Court
N. D. Ohio, E. D.
April 12, 1965.

Hauxhurst, Sharp, Cull & Kellogg, Burt Fulton, Cleveland, Ohio, for plaintiff.

Falsgraf, Kundtz, Reidy & Shoup, John H. Wilharm, Jr., Cleveland, Ohio, for defendant Transportation Underwriters, Inc.

Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant Industrial Roofing & Sheet Metal Co.

Cozza & Steuer, Robert C. Buck, Jr., Cleveland, Ohio, for defendant General Ins. Co. of America.

Dudnik, Komito, Nurenberg, Plevin, Dempsey & Jacobson, Aaron Jacobson, Cleveland, Ohio, for defendant Joseph A. Laurie.

Kilbane, McDonald & Sweeney, Cleveland, Ohio, for defendants Patricia, Edward and James Harants.

CONNELL, Chief Judge.

The genesis of this labyrinthine lawsuit is a traffic accident on December 4th, 1959, out of which personal injury suits have been filed against Industrial Roofing & Sheet Metal, Inc. in Ohio courts by Edward Harants, James Harants, Patricia Harants and Joseph A. Laurie. In addition, General Insurance Company of America has filed a property damage claim against Industrial Roofing & Sheet Metal, Inc., but in this case we are concerned only with the personal injury actions against Industrial Roofing & Sheet Metal, Inc.

The truck which the Industrial employee was driving had been leased by Industrial from the defendant Trucklease, Inc., a wholly-owned subsidiary of Cleveland Cartage Company, on June 19th, 1957. As part of the lease agreement Trucklease agreed to procure and maintain liability insurance. On December 5, 1957, as part of that agreement, Trucklease sent a certificate of insurance written through the defendant Transportation Underwriters, Inc. which was evidence of coverage extended to Industrial against loss or damage by reason of liability for bodily injury or death in the amount of $100,000/$300,000 and property damage in the amount of $5,000. On June 2, 1959, the plaintiff herein, Maryland Casualty Company, issued to Indus-

trial a policy of insurance affording coverage to the latter for bodily injury in the sum of $250,000/$500,000 and for property damage liability in the sum of $100,000. The policy of insurance contained the following provision:

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

It is the position of the plaintiff, Maryland Casualty Company, that its insurance is excess to that written by Transportation Underwriters. After unsuccessful demand that Transportation Underwriters or Cleveland Cartage and/or Trucklease defend the above mentioned lawsuits in the State court, Maryland Casualty Company filed here for declaratory judgment under 28 U.S.C. § 2201. Jurisdiction is *apparently* rightfully invoked by reason of diversity of citizenship. Plaintiff sought a declaration that it be relieved of the duty to defend the above mentioned lawsuits, that Transportation Underwriters be required to assume that duty and that its coverage would be excess to that of defendant Transportation Underwriters.

Defendant Transportation Underwriters has filed a copy of their certificate of insurance which indicates no imposition of the obligation on the underwriters to defend any lawsuits which might be brought against their assured. The contract of insurance gives them no right to defend any lawsuit which might be brought against the assured, so consequently they have no correlative duty to do so. The contract of insurance is by its express terms a contract to indemnify the insured for certain sums which it might be legally liable to pay as damages for bodily injury or property damage. On page 3 of the contract it states that the underwriters are to pay a portion of the costs incurred by the assured in defending a lawsuit within the coverage of the policy, but only in the event that the defense of that lawsuit proves to be unsuccessful.

The plaintiff, Maryland Casualty Company, now admits that these documents place no obligation on Transportation Underwriters to assume the defense of Industrial in the personal injury actions which have been brought as a result of the accident. It is argued by the plaintiff, however, that the complaint in the case at bar is not limited to the question of who is and who is not to defend these lawsuits; in the alternative, it prays for an adjudication that Transportation Underwriters is obligated to indemnify Industrial (and Maryland in the event that Maryland becomes subrogated to Industrial) for legal expenses incurred in the defense of the State court actions. Of course it becomes immediately apparent that the resolution of this question hinges upon the result in the State court proceedings; if the defense of those actions is successful, Transportation Underwriters would owe nothing. Thus the issue which we are supposed to decide here is purely speculative and contingent upon the result of lawsuits over which we have no control.

We are uncomfortably aware that insurance companies have attempted to use federal courts as arenas for the determination of questions which arise in State court litigation. In this case, we seriously doubt whether the parties have even brought a justiciable issue before us. We do not open our courts to furnish insurance companies with advisory opinions as to who may or may not be required to pay a claim which may or may not be awarded against either, both, or neither of two or more insurance companies.

"The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." (Emphasis supplied) Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, p. 273, 61 S.Ct. 510 p. 512, 85 L.Ed. 826.

 There is no immediate, real controversy, but rather only a speculative and remote possibility of a controversy. Inasmuch as the defendant Transportation Underwriters would not even be liable under the terms of the insurance contract for the costs of the State court action, unless that action results in a verdict for the plaintiff, there is *no* controversy unless and until such a verdict is returned, and it is within the terms of the defendant's contract.

Even if jurisdiction was proper, we would feel obligated to dismiss this lawsuit in the exercise of that discretion which the law affords us. We are weary of watching insurance companies involved in multi-defendant (or multiple coverage) State court litigation wait until that litigation appears on the trial docket and then file a declaratory judgment action in a federal court where they ostensibly argue coverage but where, inevitably, questions of liability furtively slip in. Meanwhile, while a federal court declaratory judgment action works its tedious path to completion, the State court proceeding inevitably halts. This case is a perfect example. The accident occurred on December 4th, 1959; this action was filed here on November 17th, 1963—*four* years later. It has now been five and a half years since the accident, and the injured people have yet to see a courtroom. This is intolerable.

The Court, on its own motion, having determined that there is a fatal federal jurisdictional defect, orders that the action be dismissed with prejudice and that all defendants shall go hence with their costs.